|  |  |  |
|---|---|---|
| STAR PACIFIC CORP., | : | |
| Plaintiff, | : | Civil Action No. 08-04957 (SDW)(MCA) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| STAR ATLANTIC CORP., a New Jersey | : | |
| Corporation, STAR ATLANTIC CORP., a | : | |
| Florida Corporation, QI LU, YAFEI ZHAO | : | June 10, 2011 |
| a/k/a ALFRED ZHAO, ZHENG LI a/k/a | : | |
| MICHAEL LI, JOHN DOE #1-10, JANE | : | |
| DOE 1-10, and XYZ CORPORATION #1- | : | |
| 10, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Star Pacific Corporation's ("SPC") Motion for Summary

Judgment against Defendant Qi Lu ("Defendant" or "Lu") pursuant to Fed. R. Civ. P. 56(c)

("Motion"). This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1338 and

17 U.S.C. § 101 et seq. and supplemental jurisdiction pursuant to 28 U.S.C. §1367. Venue is

proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a). This Motion is decided

without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons discussed below, the Court

grants Plaintiff's Motion, in part, and denies it, in part, and dismisses Defendant's counterclaims.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a corporation that manufactures, markets, distributes and sells rugs, bathroom

mats and comforters. (First Am. Compl. (hereinafter "Am. Compl.") ¶¶ 5, 18.) Plaintiff alleges

that most of the bathroom mats it sells are part of a three-piece set that includes a toilet cover,

toilet foot rug and a sink mat. (Id. ¶ 18.) The bathroom sets are categorized into seven collections: (1) Excel 3PC, (2) Deluxe 3PC, (3) Ideal 3PC, (4) Grand 3PC, (5) Heather 3PC, (6) Fashion 3PC, and (7) Bravo 3PC. (Id.) Each collection has a unique design. For example, the Excel 3PC collection has two designs with "Flowers" and "Leaves;" the Deluxe 3PC collection has five different designs featuring "Flowers," "Palm Tree," "Dolphin," "Shell," and "Fish;" and the Bravo 3PC has one design with "Flowers." (Id. ¶¶ 19-21.) Additionally, Plaintiff sells Excel single mats with "Leaves," "Fish," and "Kite" designs, (id. ¶ 22), and a Deluxe single mat with a "Flowers" design. (Id. ¶ 23.) Plaintiff registered the copyright for the "Excel 3PC Collection" on April 12, 2005, the "Deluxe Palm Tree Collection" on June 16, 2005, and all designs under the title of "Star Pacific 2005 Collection" on November 3, 2005. (Id. ¶ 24.)

### 1. The State Court Action

Prior to the instant litigation, Chang-Sheng Liu ("C. Liu") was a shareholder of SPC with an ownership interest of forty percent.[1] (Liu Decl. Ex. B, at 2.) In 2006, C. Liu "fabricated the existence of a shareholder," Wang-Ren Fei ("Fei"), by "illegally and improperly" issuing him 400 shares of SPC, which represented a twenty percent[2] ownership interest in the company. (Pl.'s Statement of Facts ¶ 8; Liu Decl. Ex. B, at 2) (internal quotation marks and citation omitted). With Fei's interest, C. Liu was vested with a majority of the shares in SPC. (Liu Decl. Ex. B, at 3.) Subsequently, C. Liu wrested control of the company from then president Frank Liu ("F. Liu") "and began to run the company on this illegitimate basis, propped up with documents

---

[1] The other shareholders of SPC and their ownership interests are: (1) Frank Liu with 700 shares and a thirty-five percent ownership interest; (2) Emma Hu with 200 shares and a ten percent ownership interest; and (3) Douglas Shin with 300 shares and a fifteen percent ownership interest. (Liu Decl. Ex. B, at 2.)
[2] The Plaintiffs in the State court action alleged that C. Liu's issuance of those stocks to Fei "resulted in a total stock issuance in excess of the amount authorized by" SPC. (Liu Decl. Ex. B, at 2.)

forged at his direction, to the exclusion of the other shareholders, Frank Liu, Emma Hu [("Hu")], and [] [Douglas] Shin [("Shin")]." (Pl.'s Statement of Facts ¶ 8.)

Consequently, on November 14, 2006, the other shareholders of SPC initiated a lawsuit against C. Liu in the Superior Court of New Jersey, Bergen County, alleging, among other things, breach of fiduciary duty and civil conspiracy to dilute the other shareholders' ownership interests and skim funds (the "State court action"). (Am. Compl. ¶ 31; Liu Decl. Ex. B, at 3.) A bench trial was conducted in February 2008. (Am. Compl. ¶ 33.) On June 27, 2008, the trial court found that C. Liu had a "complete lack of credibility, and . . . perpetrated a fraud upon the company, and its shareholders." (Liu Decl. Ex. B, at 11.) The court also found that C. Liu breached his fiduciary duty to SPC and his fellow shareholders, "diverted over one million dollars in assets and inventory of the company for his own benefit," and "caused the [] [other shareholders] to lose their investments" in the corporation. (Id. at 12, 13). The court further found that C. Liu's actions "were outrageous, calculated to inflict personal harm, [and] entirely beyond the pale of acceptable behavior." (Id. at 13.) Consequently, the court entered judgment in favor of F. Liu, Hu, and Shin and against C. Liu in the amount of $1,400,000 "for breach of fiduciary duty, and fraud, and conversion." (Liu Decl. Ex. B, "Judgment" at 3.) Furthermore, the court entered judgment in favor of the plaintiffs against C. Liu in the amount of $450,000 for punitive damages. (Id.)

2. **The Federal Action**

Subsequently, SPC initiated this suit against Defendants[3] as a result of the schism in the corporation. Plaintiff alleges that in March 2007, C. Liu, Yafei Zhao a/k/a Alfred Zhao

---

[3] On March 11, 2010, the Court entered default judgment against Defendants Star Atlantic Corporation, a New Jersey corporation, Star Atlantic Corporation, a Florida corporation, Yafei Zhao a/k/a Alfred Zhao, and Anna Karina, Inc. See Docket Entry No. 147. Additionally, on August 23, 2010, SPC settled and filed a Stipulation of

("Zhao"), who was a former sales manager at SPC, and Zheng Li a/k/a Michael Li ("Li"), SPC's former salesperson,[4] "funneled" money and inventory from SPC and formed a new corporation, Star Atlantic Corporation in Florida ("SAC-FL"). (Am. Compl. ¶¶ 36, 37.) Further, Plaintiff alleges that C. Liu, Zhao and Li "converted SPC's inventory and other valuable resources such as existing marketing channels, usurped Plaintiff's business opportunities, engaged in direct competition with SPC by selling [P]laintiff's products as their own through SAC-FL directly to [P]laintiff's existing customers," and "imported and sold large quantities of merchandise bearing SPC's copyrighted designs and in virtually identical SPC[] packaging." (Id. ¶¶ 41, 42; see also id. ¶¶ 45-47.) Although Zhao and Li were competing with SPC during this period, Plaintiff alleges that they were still receiving salaries from SPC. (Id. ¶ 43.)

Thereafter on April 20, 2007, Defendant Lu, on behalf of Beslun Fashion Inc., signed a Cooperation Agreement (the "Agreement") with SAC-FL. (Li Decl. Ex. O; Pl.' Statement of Facts ¶ 39.) Pursuant to the Agreement, Lu advanced SAC-FL "no less than" $350,000 as "working capital." (Id. at 1.) On October 29, 2007, Defendant allegedly formed a new corporation, Star Atlantic Corporation, New Jersey ("SAC-NJ"), which had its warehouse in Carlstadt, New Jersey. (Am. Compl. ¶ 50; Liu Decl. Ex. E.) Lu is named as the incorporator and agent of SAC-NJ in the corporation's incorporation papers. (Liu Decl. Ex. E.) He is also "an officer, shareholder and director" of the corporation. (Li Decl. Ex. N, ¶ 7.) Additionally, Defendant was a signatory of two of SAC-NJ's bank accounts, processed money from SAC-NJ's bank and other accounts to pay overseas vendors, and was listed as an employee on SAC-NJ's monthly payroll. (Li Decl. Ex. N, ¶ 7; Li Decl. Ex. I; Li Decl. Ex. D.)

---

Dismissal as to Defendants Ocean Textile Corporation and Zheng Li a/k/a Michael Li. See Docket Entry No. 169. As a result, these Defendants are no longer parties to this action. The only remaining named Defendant is Lu.
[4] Li was also the former officer manager of SPC Rug & Linen Outlet Inc. ("SPC-RLO"), a wholly owned subsidiary of SPC located in Miami, Florida. (Pl.'s Statement of Facts ¶¶ 2, 16.)

Plaintiff maintains SAC-NJ was formed "to engage in direct competition with SPC." (Am. Compl. ¶ 49.) Subsequently, Lu, Zhao, Li, and C. Liu merged SAC-FL with SAC-NJ and continued to sell SPC's products. (Id. ¶¶ 51, 63.) Furthermore, Plaintiffs allege that a side-by-side comparison of its products with Defendant's products shows that Defendant copied its copyrighted designs. (Id. ¶¶ 64-66.) Additionally, Plaintiff asserts that Defendant used an identical packaging header as that used by SPC. (Id. ¶¶ 67-69.)

On October 8, 2008, Plaintiff initiated this action alleging copyright infringement in violation of 17 U.S.C. § 501 (Count I), (id. ¶¶ 75-89), trade dress infringement in violation of 15 U.S.C. § 1125(a) (Count II), (id. ¶¶ 90-99), unfair competition in violation of 15 U.S.C. § 1125(a) (Count III), (id. ¶¶ 100-107), and unfair competition in violation of N.J. Stat. Ann. 56:4-1 et seq. (Count IV), (id. ¶¶ 108-112), against Lu, individually and as an agent for SAC-NJ, and the other Defendants.[5] On that same day, Plaintiff filed an Order to Show Cause and made an application for a Temporary Restraining Order and an Order of Seizure and Impoundment. (Li Decl. Ex. B.) This Court issued an ex parte seizure order for the infringing goods at the New Jersey location. (Id.) However, prior to the issuance of this Court's October 8, 2008 Order, SAC-NJ had vacated the New Jersey warehouse and began operating from a warehouse in Norcross, Georgia. (Pl.'s Statement of Facts ¶¶ 57-58.)

On November 21, 2008, Defendants filed an answer and counterclaim. Defendants assert that in March 2007, SPC informed Zhao that it was having financing troubles and Zhao might be terminated as a result. (Defs.' Countercl. ¶ 7.) Although SPC allegedly sought to terminate Zhao, it allegedly owed him a substantial amount of money for work he had performed

---

[5] Although the Complaint has four claims, Plaintiff's brief in support of its Motion only addresses the copyright infringement and trade dress infringement claims. Plaintiff states that it will withdraw the other claims: unfair competition under the Lanham Act and the New Jersey Unfair Competition Act, and waive its request for attorneys' fees if the Court grants its Motion. (Pl.'s Br. 1 n. 1.)

for SPC. (Id. ¶ 9.) Defendants further allege that in lieu of Zhao filing a lawsuit against SPC to recover the unpaid wages, he entered into an agreement with C. Liu on May 7, 2007. (Id. ¶ 10.) The alleged agreement permitted Zhao and his business associates "to use, manufacture, resale, distribute, import and export any" of SPC's "copyrighted and non-copyrighted patterns, designs, drawings, product names and design numbers." (Id. ¶ 11.) Defendants maintain that this agreement provided them with a valid license agreement; therefore, their use and sale of SPC's products and designs is not actionable. (Id. ¶¶ 14-17.) Consequently, Defendants seek that the Court find they had a valid license agreement. Alternatively, Defendants maintain that even if the Court finds that they did not have a valid license, the Court should not impose any liability because they relied on the alleged license in good faith.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculation, unsupported assertions or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crafting Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. "Such affirmative evidence - - regardless of whether it is direct or circumstantial - - must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which . . . [it has] the burden of proof," then the moving

party is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 322.


### DISCUSSION

**1. SPC's Claims**

   **a. Copyright infringement**

Plaintiff moves for summary judgment on its copyright infringement claim.  In order to

succeed on a claim for copyright infringement, a plaintiff must prove: "(1) ownership of a valid

copyright; and (2) unauthorized copying of original elements of the plaintiff's work."  Dun &

Bradstreet Software Services. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002) (citing

Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1231 (3d Cir. 1986); Gates

Rubber Co. v. Bando Chem. Indus., 9 F.3d 823, 831 (10th Cir. 1993)).  A "certificate of a

registration made before or within five years after first publication of the work shall constitute

*prima facie* evidence of the validity of the copyright."  17 U.S.C. § 410(c).  However, a

defendant may rebut this presumption by proving that the copyright is invalid.  Masquerade

Novelty v. Unique Indus., 912 F.2d 663, 668 (3d Cir. 1990) (citing Hasbro Bradley, Inc. v.

Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985)).  "A plaintiff establishes unauthorized

copying by showing that the defendant 'had access to a copyrighted work' and 'that there are

substantial similarities between the two works."  Mon Cheri Bridals, Inc. v. Wen Wu, 383 Fed.

Appx. 228, 235 (3d Cir. 2010) (quoting Dam Things from Denmark v. Russ Berrie & Co., 290

F.3d 548, 561 (3d Cir. 2002)).

Here, there is no genuine issue of material fact regarding Defendant's infringement of

Plaintiff's copyrights.  Plaintiff has federal copyright registrations for its "Excel Collection"

8

(copyright registration number VA 0001309528), "Deluxe Palm Tree Collection" (copyright registration number VA 0001328583), and "Star Pacific 2005 Collection" (copyright registration number VA 0001372115). (Liu Decl. Exs. F, G, H.) Moreover, § 410(c) states that these registration certificates provide *prima facie* evidence of the validity of Plaintiff's copyrights. Defendant has not offered any evidence to rebut this presumption. Therefore, Plaintiff holds valid copyrights for these products.

Plaintiff has also proven unauthorized copying. There is sufficient evidence in the record to establish that Defendant had access to the copyrighted work and that SPC's copyright products are substantially similar to SAC-NJ's products. Defendant had access to SPC's products because SAC-NJ merged with SAC-FL, which had been selling and passing off SPC's products as its own. (Am. Compl. ¶¶ 41, 42.) Moreover, after the merger, SAC-NJ retained Zhao, Li, and C. Liu, three people who had previously been associated with SPC and had access to its copyrighted designs. Furthermore, a side-by-side comparison of SPC's products with Defendant's products shows, (Liu Decl. ¶¶ 29-31; Am. Compl. ¶¶ 64-69), "that there are substantial similarities between the two works." Mon Cheri Bridals, 383 Fed. Appx. at 235 (internal quotation marks and citation omitted).

Lu does not dispute that he and the other Defendants had access to SPC's designs or that SAC-NJ's designs are substantially similar to SPC's. Nonetheless, he contends that he is not liable because he simply loaned money to SAC-FL and SAC-NJ and had no further involvement with the corporations. (See Def.'s Opp'n Br. 11.) According to Defendant, he was not an employer of SAC-NJ, he did not receive compensation from the corporation, and "he had no involvement in the management of SAC-NJ and was never interested in SAC-NJ's business." (Id.) This Court finds that the record demonstrates the opposite. Defendant incorporated SAC-

NJ and acted as an officer, director, agent, and shareholder. (Li Decl. Ex. N, ¶ 7.) Furthermore, he was a signatory of two of SAC-NJ's bank accounts, processed money from SAC-NJ's bank to pay overseas vendors, and was listed as an employee on SAC-NJ's monthly payroll. (Li Decl. Ex. I; Li Decl. Ex. D.) Thus, contrary to Defendant's assertions, he was clearly substantially embroiled in SAC-NJ's management and operations. Consequently, he is personally liable for copyright infringement.

Alternatively, Defendant is liable for contributory infringement of Plaintiff's copyrights. As the Third Circuit has noted, "[i]t is well settled that 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing activity of another, may be held liable as a contributory infringer.'" Columbia Pictures Indus. v. Redd Horne, 749 F.2d 154, 160 (3d Cir. 1984) (quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)). Therefore, "[a]n officer or director of a corporation who knowingly participates in the infringement can be held personally liable . . . ." Columbia Pictures Indus., 749 F.2d at 160. Defendant argues that he is not liable for contributory infringement because he did not know of the alleged infringing activities and he had no connection to the activities. (Def.'s Opp'n Br. 12.) Lu is not truthful in his denials of knowledge of infringement. The record demonstrates that Defendant actively participated in SAC-NJ's management and operation. Hence, he was aware that SAC-NJ sold products and merchandise bearing SPC's copyrighted designs. Therefore, he materially contributed to SAC-NJ's infringing activities.

### b. Trade dress infringement

Plaintiff also moves for summary judgment on its trade dress infringement claim against Defendant. Plaintiff alleges that Defendant copied its packaging design and the "overall

presentation features" of its products. (Compl. ¶ 93.) The Lanham Act, 15 U.S.C. § 1125(a), provides for a cause of action for trade dress infringement. TrafFix Devices, Inc. v. Mtkg. Displays, Inc., 532 U.S. 23, 28-29 (2001). "'Trade dress' refers to the design or packaging of a product which serves to identify the product's source." McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007) (quoting Shire U.S., Inc. v. Barr Labs., Inc., 329 F.3d 348, 353 (3d Cir. 2003)). It refers to "'the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique.'" McNeil Nutritionals, LLC, 511 F.3d at 357 (quoting Rose Art Indus., Inc. v. Swanson, 235 F.3d 165, 171 (3d Cir. 2000)). Trade dress protection serves to "'secure the owner of the trade dress the goodwill of his[/her] business and to protect the ability of consumers to distinguish among competing producers.'" McNeil Nutritionals, LLC, 511 F.3d at 357 (quoting Shire U.S., Inc., 329 F.3d at 353).

To allege a claim for trade dress infringement, "a plaintiff must prove that (1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." McNeil Nutritional, LLC, 511 F.3d at 357 (citing Shire U.S., Inc., 329 F.3d at 353). Generally, "a product feature is functional, and [non-protectable], if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." TrafFix Devices, 532 U.S. at 32 (quoting Qualitex Co. v. Jacobson Products Co., 514 U.S. 159, 165 (1995)) (internal quotation marks omitted).

Here, Plaintiff has established that the design is non-functional. The designs in Plaintiff's products and packaging are neither "essential to the use or purpose of" the products nor "affect the [products'] cost or quality." TrafFix Devices, 532 U.S. at 32.

However, Plaintiff has failed to established that its designs are "inherently distinctive or has acquired secondary meaning." McNeil Nutritional, LLC, 511 F.3d at 357. "[A] mark is inherently distinctive if '[its] intrinsic nature serves to identify a particular source.'" Wal-Mart Stores v. Samara Bros., 529 U.S. 205, 210 (2000) (alteration in original) (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)). A mark could also be distinctive "if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" Wal-Mart Stores, 529 U.S. at 211 (alteration in original) (quoting Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 851 n.11 (1982)). In Wal-Mart Stores, the Supreme Court concluded that "design, like color, is not inherently distinctive." 529 U.S. at 212. The Court reasoned that undisturbed

> [i]n the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs - - such as a cocktail shaker like a penguin - - is intended not to identify the source, but to render the product itself more useful or more appealing.

Id. at 213. Therefore, "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible [sic] only upon a showing of secondary meaning." Id. at 216. However, the Court instructed that its holding in Two Pesos was undisturbed. Hence, a product's packaging can still be protected under § 43(a) if it is established that the packaging is inherently distinctive. Id. at 214-15.

12

"If the mark at issue is federally registered and has become incontestable, then validity, legal protectablity, and ownership are proved." Commerce Nat'l Ins. Services, Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000). In this case, SPC has not registered its trademark with the USPTO; therefore, inherent distinctiveness cannot be found on that basis. Plaintiff merely states that its "packaging is unique and distinctive," (Pl.'s Br. 1), without providing any evidence to support its assertion.

Furthermore, SPC has not shown that its product design has acquired secondary meaning. Secondary meaning "denotes that the purchasing public associates the design of the product with a particular source." Versa Products Co. v. Bifold Co., 50 F.3d 189, 198 (3d Cir. 1995). As one court puts it: "To acquire secondary meaning in the minds of the buying public, an article of merchandise when shown to a prospective customer must prompt the affirmation, 'That is the article I want because I know its source,' and not the negative inquiry as to 'Who makes that article?'" Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc., 270 F.3d 298, 311 (6th Cir. 2001) (quoting Ferrari S.P.A. Esercizio v. Roberts, 944 F.2d 1235, 1239 (6th Cir. 1991)). SPC urges this Court to conclude that it has established secondary meaning because it has provided proof of intentional copying. (Pl'.s Supplemental Br. 2.) However, intentional copying alone is not enough to prove secondary meaning. As the Third Circuit has noted, there other factors which should be considered in making that determination. These include: "(1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and (11) actual confusion." Commerce Nat'l Ins. Services, Inc., 214 F.3d at 438; see also Gen. Motors Corp. v. Lanard Toys, Inc., 468 F.3d 405, 419 (6th Cir. 2006) ("Intentional copying . . .

13

is only one of many considerations . . . and does not alone establish secondary meaning."), cert. denied, 552 U.S. 819 (2007); AcademyOne, Inc. v. CollegeSource, Inc., 2009 U.S. Dist. LEXIS 118849, at *55 (E.D. Pa. Dec. 21, 2009) (explaining that intentional copying, "standing alone, is not sufficient to establish secondary meaning"); Good 'N Natural v. Nature's Bounty, Inc., 1990 U.S. Dist. LEXIS 11414, at *34 (D.N.J. Aug. 30, 1990) ("The better rule is that evidence of intentional copying may be corroborative of other circumstantial evidence of secondary meaning, but is insufficient by itself to establish that meaning."). Other than intentional copying, SPC has not provided any evidence that goes to the other factors articulated in Commerce Nat'l Ins. Services, Inc. and there is no other evidence in the record indicating secondary meaning. As a result, Plaintiff has failed to meet the second element of a trade dress infringement claim. Consequently, Plaintiff has failed to establish trade dress infringement.

### 2. Lu's counterclaims

Defendant maintains that it has permission to use Plaintiff's copyrighted materials pursuant to an alleged licensing agreement between Zhao and SPC. (Defs.' Countercl. ¶¶ 14-17.) Defendant asserts that the alleged agreement was made on May 7, 2007, and C. Liu signed the agreement on SPC's behalf. (Id. ¶ 10.) However, the purported agreement between Zhao and SPC has already been declared invalid. On March 16, 2007, the judge in the State court action ordered that "[t]here shall be no sale or encumbrance of any company assets outside the ordinary course of business without the consent of the parties or Order of the Court." (Liu Decl. Ex. A, ¶ 9.) In violation of the court's March 16, 2007 Order, C. Liu allegedly entered into this licensing agreement with Zhao. Consequently, the trial judge in the State court action found that C. Liu violated its order "by secretly assigning or licensing all the patterns and designs of Star

Pacific Corp., copyrighted or non-copyrighted to Star Atlantic Corp." (Liu Decl. Ex. K, ¶ 1.) The court further stated that "[s]ecretly assigning or licensing all the patterns and designs of Star Pacific Corp., copyrighted and non-copyrighted, [wa]s not within the 'ordinary course of business' of Star Pacific Corp[.], but rather part of the defendant's [(C. Liu)] campaign to strip the company of its assets and property." (Id.) Therefore, the alleged licensing agreement is invalid and Defendant did not have permission to use SPC's copyright materials.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is **GRANTED**, in part, and **DENIED**, in part, and Defendant's counterclaims are **DISMISSED**.

**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**